UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PETER SCHIFF,**

    **Plaintiff,**

v.                                                  Case No. 8:11-mc-45-T-24TBM

**GERALD T. GRENOUGH**
**and NANCY A. GRENOUGH,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on **Plaintiff's Motion to Hold Defendants in Civil Contempt** (Doc. 2). For reasons set forth herein, I recommend that the Court **DENY** the Motion.

A.

On April 13, 2011, Plaintiff, Peter Schiff (Schiff or Plaintiff), registered a foreign judgment in this District. (Doc. 1). In pertinent part, the Agreed Judgment, entered by the District Court for the Eastern District of Tennessee in Knoxville, directed the Defendants, Gerald and Nancy Grenough (Defendants), to transfer to Plaintiff a condominium property together with furnishings, and provided that,

> [t]he defendants agree to an additional monetary judgment in the amount of $150,000 due and payable one (1) year from the date of the entry of the order. This Agreed Judgment amount shall be interest free for the initial one (1) year

>term but shall thereafter accrue interest at the judgment rate then in effect if not timely paid.[1]

*Id.*

On July 25, 2011, Plaintiff filed his instant **Motion to Hold Defendants in Civil Contempt** (Doc. 2). By his Motion, Plaintiff avers that Defendants have paid only $2.00 of the $150,000.00 monetary judgment set forth in the Agreed Judgment even though Defendants have the means to pay the monetary judgment. While Plaintiff has made demands for payment, the Grenoughs have refused to pay. Plaintiff further alleges Defendants have been difficult to locate and have multiple addresses, moving frequently to avoid the judgment. Plaintiff seeks an Order finding Defendants in civil contempt and requiring Defendants to pay Plaintiff the sum of $149,998.00, plus statutory interest and costs, and reasonable attorney's fees.[2]

On August 25, 2011, the undersigned entered an Order to Show Cause, directing Defendants to show cause why they should not be held in contempt or otherwise sanctioned for failing to satisfy the Agreed Judgement entered on July 24, 2001. *See* (Doc. 4). Defendants were directed to respond to both the Plaintiff's Motion (Doc. 2) and the Order to Show Cause. (Doc. 4). On September 9, 2011, Plaintiff made due return to the Court of proof of service on Defendants. (Doc. 5). On October 21, 2011, Defendants, proceeding *pro*

---

[1]The Agreed Judgment is certified by the Clerk in Tennessee. Per the certification, the Agreed Judgment was entered on July 24, 2001. The Agreed Judgment itself, however, reflects only the year 2001.

[2]At the hearing, Plaintiff asked for incarceration as the remedy for a contempt finding.

*se*, filed an "Answer to Complaint," wherein they expressed a willingness to satisfy the Agreed Judgment, but claimed they were without the ability to do so. (Doc. 8). On the same day, Defendants filed a letter to the Court, which was construed as their response to the Order to Show Cause. (Doc. 9).

On October 27, 2011, the date on which the Show Cause hearing was set, Plaintiff advised additional time was needed to conduct discovery. The hearing was recessed to permit Plaintiff additional discovery.[3] Defendants were directed to fully cooperate with discovery requests and to obtain and produce tax returns for the past seven years. After additional continuances, the Show Cause hearing reconvened on May 8, 2012.

B.

Mr. Schiff and the Grenoughs offered testimony. Additionally, Plaintiff entered into evidence a calculation of interest,[4] bank statements of Defendants, and documents pertaining to Star Holdings, and assorted other documents. *See* Pl.'s Ex. List (Doc. 41). Defendants entered into evidence a summary of their income and expense history for ten years, tax return transcripts for ten years (2001-2010), bank statements, and the settlement statement from the sale of their home in 2002. *See* Defs.' Ex. List (Doc. 42).

---

[3] At the hearing, Plaintiff submitted into evidence Pinellas County Property Appraiser Information regarding Defendants' property and a financial statement of Star Holdings, Ltd., dated July 31, 1997. (Doc. 13). Defendants submitted into evidence discovery they had provided in aid of enforcing the Agreed Judgment. (Doc. 12).

[4] By Plaintiff's calculations, Defendants owe $88,567.81 in total interest. (Pl.'s Ex. 1).

3

Plaintiff testified that he has received only $2 from the Defendants toward the Agreed Judgment. The debt underlying the Agreed Judgment derived from Mr. Schiff giving the Grenoughs $200,000 purportedly for investment in the Star Holdings Limited Joint Venture, (Pl.'s Ex. 17), which the Grenough's claimed was lost through bad investments, management fees, etc. After obtaining the Agreed Judgment, Mr. Schiff did not hear from the Grenoughs and no payment on the monetary judgment was received. In or after July 2002, Plaintiff began efforts to locate the Grenoughs in order to resolve the matter. His attorneys' efforts to locate the Grenoughs were without success until recently.

Prior to testifying, the Grenoughs both acknowledged that the monetary judgment has not been satisfied. Mr. Grenough testified that he received $200,000 from Mr. Schiff as claimed, however, such monies (and others) were lost by his speculative investments.[5] If he could repay the debt, he would; however, since the Agreed Judgment, his income hasn't allowed this. In support, he introduced a summary of his income since 2001 and IRS transcripts. (Defs.' Exs. 1, 1A). By his account, his employment in accounting or auditing has been sporadic, and he and his wife have been forced to move a number of times in search of work and because of their financial circumstances. In 2002, they sold their house in Palm Harbor, Florida receiving net proceeds of $29,000 which they used to cover living expenses because income was low at that time. (Defs.' Ex. 2). By his account, even in years when his income was good, their expenses were such that they had no ability to pay on the judgment. As for other assets, for a brief period, he had a very small amount of money in a stock

---

[5]Neither side produces any documents revealing how the money was spent.

account.  Income received for books he wrote was minimal.  Between 2006 and January 2011, he paid the IRS under an installment agreement and he claims that their tax refunds for this period were not paid to them, but credited by the IRS against back taxes.  When they finally received a tax refund for 2010, the money went to expenses.  At present, Mr. Grenough claimed to be doing some at-will employment.

On cross-examination, Mr. Grenough acknowledged that he also invested money of his wife's aunt and others and lost that money as well in bad investments.  His wife received about $30,000 from the aunt's estate plus jewelry, but none went to Mr. Schiff.  He now contends that he felt some coercion from Mr. Schiff's representatives in entering the Agreed Judgment, despite the fact that, as it reflects, the Agreed Judgment was announced in open court in Tennessee.

Ms. Grenough testified that she too signed the Agreed Judgment willingly.  None of the monies reflected in any of the records which came to her, including more than $30,000 she received from her aunt's estate,[6] were used to pay the monetary portion of the Agreed Judgment.  She further acknowledged that she traveled to the Bahamas on one occasion and the trip was not for business.

By his testimony and the tax transcripts, Mr. Grenough's employment was spotty.  These returns reveal little income between 2001 through 2004.  Thus, his income in 2002 and 2003 was below $5,000.000.  In 2001 and 2004, the income was roughly $16,000.00 and

---

[6]It is unclear whether this money was received before or after the date of the Agreed Judgment.

5

$23,000.00 respectively. Income in 2005 and 2007 was in excess of $60,000.00. In 2006 and 2008, income was more than $70,000.00. In 2009, income was about $36,000.00 and in 2010, nearly $50,000.00. *See* (Defs.' Exs. 1, 1A). A settlement statement on the sale of their home in 2002 reveals that the Grenoughs netted $29,544.54. *See* (Defs.' Ex. 2). Bank statements from 2005 reveal monthly deposits and/or additions of thousands of dollars. *See* (Pl.'s Exs. 2-9). Bank statements from early 2011 reveal more than $10,000.00 in payroll deposits and a tax refund in the amount of $5,122.00. *See* (Pl.'s Ex. 11). Tax records also lend support to the testimony of Mr. Grenough regarding installment payments to the IRS for unpaid taxes.[7]

## C.

"[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (quoting *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)). "A finding of civil contempt -- willful disregard of the authority of the court -- must be supported by clear and convincing evidence." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful;

---

[7]Post-hearing, the Grenoughs filed a **Motion to File Out of Time** (Doc. 39). They seek permission to file an out of time response and additional exhibits in opposition to Plaintiff's instant Motion for contempt. Also pending is Defendants' **Motion to File Out of Time Incorporating Amended Exhibit III** (Doc. 43). Plaintiff opposes the Motions (Doc. 45). Upon consideration, the Motions (Docs. 39, 43) are **GRANTED**.

(2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* (citations omitted).

The movant bears the initial burden to "establish by clear and convincing evidence that the alleged contemnor[s] violated the court's earlier order." *United States v. Roberts*, 858 F.2d 698, 700-01 (11th Cir. 1988) (citing *Northside Realty Assocs. v. United States*, 605 F.2d 1348, 1352 (5th Cir. 1979)). Once this prima facie showing of a violation is made, the burden shifts to the alleged contemnor[s] to produce evidence explaining their noncompliance at a show cause hearing. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991); *Mercer*, 908 F.2d at 768. At the show cause hearing, the alleged contemnors may defend on grounds that they did not violate the court order or that they violated the court order but should be excused from complying because they were unable to comply. *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992); *Mercer*, 908 F.2d at 768. To succeed on an inability defense, the alleged contemnors must go beyond a mere assertion of inability and establish that they had made in good faith all reasonable efforts to meet the terms of the court order in question. *In re Lawrence*, 279 F.3d 1294, 1297 (11th Cir. 2002). If this showing is met, the burden shifts back to the movant to show that compliance was possible. *Wellington Precious Metals, Inc.*, 950 F.2d at 1529.

D.

Because I find no clear and unambiguous order of the court directing Defendants to pay the agreed monetary judgment within one year, I conclude the motion for contempt should be denied. As set forth above, a finding of contempt must be supported by clear and

convincing evidence that the order violated was both lawful and clear and unambiguous. Here, the validity of the Agreed Judgment is not in dispute. While Defendants do not raise a claim of ambiguity, I find it necessary to do so before addressing the willfulness of Defendants' non-payment. "In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)). Any ambiguities or uncertainties in a court order will be construed by the court in a light favorable to the person charged with contempt. *Id.* (citing *NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990)).

> Again, the relevant portion of the Agreed Judgment reads as follows:
>
> The defendants agree to an additional monetary judgment in the amount of $150,000 due and payable one (1) year from the date of the entry of this order. This Agreed Judgment amount shall be interest free for the initial one (1) year term but shall thereafter accrue interest at the judgment rate then in effect if not timely paid.

(Doc. 1 at 3).

I think the most reasonable reading of this portion of the Agreed Judgment is that the Grenoughs agreed to the entry of a monetary judgment against them, which was due to be paid in one year. If so paid, there was no interest charge. If paid thereafter, that is, "untimely," interest would accrue at the judgment rate. While this language may lend itself to different interpretations, under any reading, this language does not contain a clear and unambiguous order or directive by the court that the Grenoughs pay such amount within one year. And,

absent such an order, there is no disregard for the same which would support a finding of contempt. Even if this language is read otherwise, it is ambiguous because the first sentence appears to contemplate payment in one year and the second sentence appears to contemplate payment past one year without any final date that payment had to be made. Any ambiguity in these circumstances inures to the benefit of the Grenoughs. *See Ga. Power Co.,* 484 F.3d at 1291. In sum, because there is no clear and unambiguous order or directive by the court that such judgment was to be paid in one year and indeed, the order contemplated that payment might be untimely, in which event interest would accrue, Plaintiff cannot establish his claim for contempt. On this basis, I recommend that the Court **DENY** Plaintiff's Motion to Hold Defendants in Civil Contempt (Doc. 2).

Alternatively, should the Court disagree, I make the following additional findings related to willfulness of the Grenoughs' conduct and their ability to comply with any order to pay. On this record, there is no showing that the Grenoughs had or have the ability to satisfy the monetary judgment in full. Moreover, despite Plaintiff's suspicions, the available evidence does not reveal that such inability to pay is the product of Defendants hiding assets or income or is otherwise "self-inflicted." However, the evidence of record, including the testimony of the Grenoughs, IRS income tax transcripts, and bank statements, demonstrate that at various times since they entered the Agreed Judgment, the Defendants possessed the ability to pay some portion on this outstanding judgment, but they wilfully chose not to. For example, the Grenoughs netted almost $30,000.00 in 2002 on the sale of a house. Additionally, tax records reveal income in excess of $60,000.00 for two years and in excess of

$70,000.00 for two years since the Agreed Judgment. Recent bank records reveal significant payroll deposits in 2011 and a tax refund in excess of $5,000.00. Given this evidence, the Grenoughs clearly had the ability over the years to pay more than $2.00 of the monetary judgment, but wilfully chose not to. In short, they fail to demonstrate their total inability to pay some amount on the judgment or their good faith efforts to comply with the Agreed Judgment.

If the Court concludes a finding of contempt is warranted, it is necessary to address sanctions. District courts are afforded wide discretion in fashioning a remedy for civil contempt. *McGregor*, 206 F.3d at 1385 n.5 (citing *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999)). Civil contempt sanctions serve one of two purposes: they may serve to coerce the contemnor to comply with a court order or compensate a party for losses suffered as a result of the contemnor's act. *Id.* Appropriate sanctions for civil contempt include (1) a coercive fine, (2) a compensatory fine, (3) attorney's fees and costs, and (4) coercive incarceration. *Citronelle-Mobile*, 943 F.2d at 1304 (citations omitted). Civil contempt sanctions may not be used to impose what amounts to a punitive or criminal contempt sanction. *See id.* The complainant bears the burden of providing the court "with the basic evidentiary facts to formulate a realistic sanction to which the defendants could respond." *In re Chase & Sanborn, Corp.*, 872 F.2d 397, 401 (11th Cir. 1989) (bankruptcy context).

Plaintiff now seeks incarceration of the Grenoughs either as a punitive measure or to coerce compliance. However, incarceration may be used to obtain compliance only where the

10

contemnors have the present ability to purge themselves of contempt and willfully fail to comply with the court order. *Bowen v. Bowen*, 471 So.2d 1274, 1277 (1985); *see also Wellington Precious Metals, Inc.*, 950 F.2d at 1529 (providing that where contemnor makes clear showing that he is unable to comply with order, imprisonment cannot continue). Here, while Plaintiff demonstrates that the Grenoughs, at certain times over the last ten plus years, had the ability to satisfy at least a portion of the monetary judgment, he has not demonstrated the Grenoughs' current ability to do so or that the Grenoughs had the means to satisfy the monetary judgment in full at any time since entry of the Agreed Judgment. In the circumstances, a period of coercive incarceration is unwarranted and not allowed.

There are other lesser remedies for a finding of contempt. The Court may grant Plaintiff a continuing writ of garnishment and/or direct payment of a lawful portion of any income to the Plaintiff on a continuing basis. As an aid to any efforts to execute on the judgment, the Court may direct that the Defendants hereafter notify Plaintiffs of each new employment or income producing venture they engage in, any recovery they may make, or any sizable monetary gifts or devises they may hereafter receive. Any such order should also require that Defendants notify Plaintiff and this Court of their address each time they undertake to move.

E.

Accordingly, I recommend that Plaintiff's Motion to Hold Defendants in Civil Contempt (Doc. 2) be **DENIED.**  Should the Court disagree, a limited order of contempt as set forth herein is in order.

                                                              Respectfully submitted on this
                                                              22nd day of October 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record
Pro Se Defendants